J-S26004-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JULIE ANN TIPTON | : | |
| | : | |
| Appellant | : | No. 720 WDA 2019 |

Appeal from the Judgment of Sentence Entered March 14, 2019
In the Court of Common Pleas of McKean County Criminal Division at
No(s):  CP-42-CR-0000143-2017

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                         FILED JULY 23, 2020

Julie Ann Tipton (Appellant) appeals from the judgment of sentence imposed after a jury convicted her of conspiracy to commit persons not to possess firearms.[1]  After careful review, we affirm.

On February 24, 2017, Appellant was charged with two counts of intentionally/knowingly returning a firearm to a person with a current Protection from Abuse (PFA) order, 18 Pa.C.S.A. § 6105(a.1)(5), stemming from an incident that occurred on September 25, 2016.  That day, Sergeant Benjamin Whitmore, while investigating an unrelated incident, observed Appellant's husband, William Tipton (Tipton), retrieve a semi-automatic firearm from his residence and allow his six-year-old daughter to hold the gun

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 903 and 6105(a)(1).

and fire a shot into the woods. Affidavit of Probable Cause, 2/24/17. Sergeant Whitmore approached Tipton, who informed Sergeant Whitmore that he was not permitted to own a firearm because he is a convicted felon, but that the firearm belonged to his wife, Appellant.[2] Tipton and Appellant informed Sergeant Whitmore that they had two firearms, a handgun and a shotgun, which were purchased for protection.

On February 4, 2019, Appellant filed a motion to dismiss the criminal information, asserting that the charges should be dismissed because Tipton was not a defendant in a PFA action. In response, on February 5, 2019, the Commonwealth filed a motion to amend the criminal information. A hearing on both motions occurred on February 7, 2019. At its conclusion, the trial court granted the Commonwealth's motion to amend the criminal information and denied Appellant's motion to dismiss. Accordingly, the Commonwealth amended the criminal information to remove the two counts of intentionally/knowingly returning a firearm to a person with a current PFA–order, and added one count of conspiracy to commit persons not to possess firearms.

A one-day jury trial commenced on February 12, 2019, after which the jury convicted Appellant of the one count of conspiracy in the amended criminal information. On February 20, 2019, Appellant filed a motion for new trial, which the trial court denied, and on March 14, 2019, Appellant filed a

_____

[2] It is undisputed that Tipton has a conviction that disqualifies him from possessing a firearm. See N.T., 2/12/19, at 89.

motion for extraordinary relief, which the court also denied. The trial court sentenced Appellant to 22 months to 44 months at a state correctional facility on March 14, 2019. Appellant filed a timely but unsuccessful post-sentence motion. This appeal followed. Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

Appellant presents two issues for our review (reordered for ease of discussion):

1. Whether the trial court abused its discretion in permitting the Commonwealth to amend the [c]riminal [i]nformation 4 days before trial finding that (a) the amendment of the substantive offense from "Knowing/Intentionally Returning a Firearm to Someone with a Protection from Abuse Order" to "Conspiracy to Commit Person Not to Possess Firearms" does not charge an additional or different offense, and (b) the [Appellant] was not prejudiced by the 11th hour amendment?

2. Whether there was sufficient evidence to find the [Appellant] guilty beyond a reasonable doubt of Conspiracy to Commit Person Not to Possess Firearms where the evidence presented by the Commonwealth clearly failed to demonstrate (a) an agreement between the [Appellant] and her co-defendant, (b) a share[d] criminal intent to effectuate the object of said conspiracy, and (c) an overt act in furtherance of the conspiracy?

Appellant's Brief at 5.

In her first issue, Appellant contends that the trial court erred by allowing the Commonwealth to amend the criminal information four days before trial. Appellant's Brief at 13-21. Appellant avers:

The amendment completely changed the elements that the Commonwealth must prove i.e. that the [Appellant] knowingly allowed someone with a PFA access to firearms that was given to [Appellant] for safekeeping to the [Appellant] entered into an

agreement with another with the shared criminal intent and purpose of committing Person Not to Possess Firearms and thereafter taking some overt act in furtherance of the conspiracy.

Id. at 19.

We have explained:

[W]hen presented with a question concerning the propriety of an amendment, we consider:

> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted. Additionally, [i]n reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

Further, the factors which the trial court must consider in determining whether an amendment is prejudicial are:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with

the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*In re D.G.*, 114 A.3d 1091, 1094–95 (Pa. Super. 2015) (citations omitted).

Here, the trial court concluded:

The [Appellant] asserts she was prejudiced because, if the Commonwealth would have proceeded on the initial charge, she would have been able to demonstrate that there was no active PFA order against her husband, William Tipton. Although this may be true it ignores the fact that the [Appellant] told Sergeant Whitmore that she knew her husband "wasn't supposed to have a gun but that they had it for protection." She did not mention a PFA or that she knew there was a PFA, she only indicated that she knew he wasn't allowed to possess the firearm. Therefore, there is no showing that the amendment created last minute surprise. Also, the [Appellant] asserted that, had she had more time from the amendment to the start of trial she may have been able to present a different defense. However, she has failed to demonstrate that this is actually the case. Had the trial been continued the Commonwealth would have presented the same evidence that William Tipton was convicted of offenses that prohibited him from possessing a firearm; and, that the [Appellant] knew about this because she told Sergeant Whitmore that she knew he wasn't supposed to have a gun. Mr. Tipton may have been called by the defense if the case was continued, but, calling Mr. Tipton would likely strengthen the fact that he was convicted of prior offenses that prohibited him from possessing a firearm; and, the Commonwealth could have questioned him regarding his substantial relationship with the [Appellant]. Any testimony he would provide about the [Appellant's] lack of knowledge of this prohibition would be in direct contrast to her statements to Sergeant Whitmore that she did. Also, the defense certainly should have been prepared to call him regardless of whether the assertion was that his wife didn't have knowledge of a PFA, or, his prior convictions. Therefore, the court properly found that the elements of the initial counts in the information and the amended counts involved the same facts and the same basic elements; and, the [Appellant] has failed to demonstrate any actual prejudice entitling her to relief.

Trial Court Opinion, 10/10/19, at 9-10.

The record supports the trial court's rationale. Appellant was on notice that the Commonwealth intended to charge her with a crime relating to Tipton's unlawful possession of a firearm. Appellant does not articulate any specific prejudice she suffered by the amendment; rather, she generally alleges that the amendment "changed the defense to the charges, i.e. that Mr. Tipton never owned firearms and never had a PFA to there was no agreement between Appellant and Mr. Tipton, with no shared intent and no act in furtherance." Appellant's Brief at 19. While true, we note that the factual scenario was unchanged, and in defending the conspiracy charge, there appears to be no prejudice where Appellant was aware of the same facts and extensively cross-examined Sergeant Whitmore about Appellant's knowledge of Tipton's access to the firearm, and elicited testimony from him regarding Appellant's role in Tipton possessing the firearm. N.T., 2/12/19, at 78-80, 90-94.

Appellant also suggests that she suffered prejudice because, had she been on notice of the Commonwealth's intention to amend the information, she may have called Tipton and Pennsylvania State Trooper Maxim to testify on her behalf. Appellant's Brief at 20. However, as stated by the trial court, Tipton's testimony would have likely supported the Commonwealth's assertion that Tipton was convicted of an offense that prohibited him from possessing a firearm. Further, although Appellant asserts that she may have called Trooper Maxim to testify, she fails to explain how his testimony would have helped her

defense. We also note that Appellant never requested a postponement to make arrangements for additional witnesses or otherwise attend to her defense. Accordingly, Appellant's first issue lacks merit.

In her second issue, Appellant argues the evidence was insufficient to support her conviction for conspiracy to commit persons not to possess firearms. Our standard of review

> requires that we consider the evidence admitted at trial in a light most favorable to the Commonwealth, since it was the verdict winner, and grant it all reasonable inferences which can be derived therefrom. The evidence, so viewed, will be deemed legally sufficient to sustain the jury's conviction on appeal only if it proves each element of the offense charged beyond a reasonable doubt.

Commonwealth v. Poland, 26 A.3d 518, 521 (Pa. Super. 2011).

A jury convicted Appellant pursuant to 18 Pa.C.S.A. §§ 903 and 6105, which provide:

> § 903. Criminal conspiracy
>
> > (a) Definition of a conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
> >
> > > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime . . . .
>
> § 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms
>
> > (a) Offense defined.—
> >
> > > (1) A person who has been convicted of an offense enumerated in subsection (b) ... shall not possess,

- 7 -

use, control, sell, transfer or manufacture or obtain
a license to possess, use, control, sell, transfer or
manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. §§ 903(a)(1) and 6105(a)(1). "[T]o sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." Commonwealth v. Murphy, 795 A.2d 1025, 1037–38 (Pa. Super. 2002) (quotations omitted).

Appellant contends that "it is abundantly clear" that there was no agreement between Appellant and her husband for him to possess a firearm. Appellant's Brief at 24. Appellant asserts that she informed officers that she owned the firearm, not Tipton, and that she never agreed to allow him to possess or have access to the firearm. Id. at 25.

In considering this issue, "we bear in mind that the Commonwealth may sustain its burden by means of wholly circumstantial evidence, and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence." Commonwealth v. Sanchez, 82 A.3d 943, 967 (Pa. 2013).

> [A]ny doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. It is improper for this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. Additionally, the entire record must be evaluated and all evidence actually received must be considered.

Commonwealth v. Watley, 81 A.3d 108, 113 (Pa. Super. 2013).

"A conspiracy is almost always proved through circumstantial evidence. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." Commonwealth v. Lambert, 795 A.2d 1010, 1016 (Pa. Super. 2002).

> Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

Id.

Instantly, Sergeant Whitmore testified that "both [Appellant] and [Tipton] knew [Tipton] wasn't supposed to have a gun but that they had it for protection and that it was her firearm not [Tipton's] and that even though he wa [sic]– she knew he wasn't supposed to have it, they had it for protection." N.T., 2/12/19, at 84. Sergeant Whitmore recounted his observations:

> [Appellant's Counsel]: Okay. Now, at some point in time, did Mr. Tipton go in the house to retrieve the firearm?
>
> [Sergeant Whitmore]: Yes.
>
> [Appellant's Counsel]: Where was [Appellant] at that point?
>
> [Sergeant Whitmore]: Standing on the porch.
>
> [Appellant's Counsel]: Okay. She was out there the whole time[?]
>
> [Sergeant Whitmore]: Correct.

- 9 -

[Appellant's Counsel]: She didn't go in the house[?]

[Sergeant Whitmore]: Correct.

[Appellant's Counsel]: So, Bill Tipton went in there of his own accord, retrieved a firearm, came back outside[?]

[Sergeant Whitmore]: Yes.

                              *        *        *

[Appellant's Counsel]: Now, when Bill Tipton came back outside with this firearm, he went with this child and shot it, correct?

[Sergeant Whitmore]: Correct.

[Appellant's Counsel]: [Appellant] played no part in that, right?

[Sergeant Whitmore]: That's correct.

[Appellant's Counsel]: Was she talking to you while all this was going on?

[Sergeant Whitmore]: No.

[Appellant's Counsel]: Okay. She was just standing there[?]

[Sergeant Whitmore]: Correct.

                              *        *        *

[Appellant's Counsel]: When Bill Tipton came outside with the firearm, did [Appellant] tell him anything to the effect of "Take that back inside?"

[Sergeant Whitmore]: Not that I heard, sir.

N.T., 2/12/19, at 91, 93-94.

The above excerpt evinces a "web of evidence" from which the jury could find that Appellant and Tipton entered into an agreement for Appellant to

purchase a firearm so that Tipton could possess it. Appellant witnessed Tipton go into their home, retrieve the firearm, and reappear with the firearm — all without Appellant expressing any objection. When interviewed by police, Appellant indicated that "they" — Appellant and Tipton — purchased the firearm for protection. Id. at 84 (emphasis added). This evidence, viewed in the light most favorable to the Commonwealth as the prevailing party, is sufficient to establish an agreement between Appellant and Tipton for Tipton's possession of the firearm.

With regard to the element of shared criminal intent, Appellant claims "there was not even [a] modicum of evidence presented to suggest a shared criminal intent, other than the Appellant indicating that 'they' needed the firearm for protection." Appellant's Brief at 25. Appellant argues that while she and her husband needed the firearm for protection, Appellant owned the firearm without ever agreeing that Tipton could possess or have access to it. Id.

> The general rule of law pertaining to the culpability of conspirators is that each individual member of the conspiracy is criminally responsible for the acts of his co-conspirators committed in furtherance of the conspiracy. The co-conspirator rule assigns legal culpability equally to all members of the conspiracy. All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action. The premise of the rule is that the conspirators have formed together for an unlawful purpose, and thus, they share the intent to commit any acts undertaken in order to achieve that purpose, regardless of whether they actually intended any distinct act undertaken in furtherance of the object

of the conspiracy. It is the existence of shared criminal intent that is the sine qua non of a conspiracy.

Commonwealth v. Wayne, 720 A.2d 456, 463–64 (Pa. 1998) (citations omitted).

It is Appellant's position that "Mr. Tipton's access or possession of any firearm was not at the behest of the Appellant, in fact, there was no evidence presented by the Commonwealth indicating that the Appellant was even aware that her husband went into the home and retrieved the firearm and/or that she knew that her husband had access to the firearm . . . ." Appellant's Brief at 25-26. The record does not support this claim.

Through the following testimony, the Commonwealth presented sufficient evidence to prove otherwise. According to Sergeant Whitmore:

> [Appellant stated] both her and [Tipton] knew he wasn't supposed to have a gun but that they had it for protection and that it was her firearm not [Tipton's] and that even though he wa [sic]– she knew he wasn't supposed to have it, they had it for protection.
>
> *       *       *
>
> they had said they needed a handgun and a shotgun for protection.

N.T., 2/12/19, at 84 (emphasis added).

This testimony was sufficient for the jury to conclude that Appellant knew Tipton was not permitted to possess a firearm, and despite this knowledge, purchased the firearm for Appellant to access and possess. Accordingly, Appellant's argument as to shared criminal intent is without merit.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/23/2020